Viktoria Desiree Mercado
1625 Richland Avenue #24
Ceres, CA 95307
Email: mercadoviktoria@gmail.com
Pro Per

Alison Berry Wilkinson (SBN 135890)
Berry Wilkinson Law Group
165 North Redwood Drive, Suite 206
San Rafael, CA 94903
Telephone: 415.259.6638
Facsimile: 877.259.3762
Email:   alison@berrywilkinson.com
Attorneys for Defendant DAMIAN SPARKS

Forrest W. Hansen, SBN 235432
Merced County Counsel
Roger S. Matzkind, SBN 77331
Chief Civil Litigator
Janine L. Highiet, SBN 254405
Deputy County Counsel
2222 M Street, Room 309
Merced, CA  95340
Tel:    (209) 385-7564
Fax:    (209) 726-1337
Email: roger.matzkind@countyofmerced.com; Janine.highiet-ivicevic@countyofmerced.com
Attorneys for Defendants County of Merced, Merced County Sheriff's Office (a department of the County of Merced), Vernon H. Warnke, Joseph Royel, Julio Ibarra Perez, Nasir Wali

In the United States District Court

For the Eastern District of California, Fresno Division

| | |
|---|---|
| Miguel Rodriguez Cortez and Desiree Mercado,<br><br>            Plaintiffs,<br><br>      v.<br><br>County of Merced, et al.,<br><br>            Defendants. | Case No. 1:20-cv-161-LJO-SAB<br><br>**Joint Scheduling Report**<br><br>Date: November 12, 2020<br>Time: 9:00 a.m.<br>Courtroom:  9 |

The following is the Joint Scheduling Report of Plaintiff, Desiree Mercado and Defendants, County of Merced, Merced County Sheriff's Office, Vernon Warnke, Joseph Royel, Julio Ibarra Perez, Nasir Wali, and Damian Sparks

## 1. Summary of Factual and Legal Contentions

A. <u>Plaintiff Mercado contends</u>: I find the defendants liable because the car was shot at even on my side, when they knew I was inside the vehicle and I wasn't a threat at all. I didn't know they were doing a gang task enforcement, I didn't know how connected he meaning Miguel was to the things he was being accused of since then I have cut off contact with him and basically everyone in the case I have a daughter I care for full time. So this case wasn't my big concern I just wanted my phone back because they had pictures of my daughter as a baby. Mr Merin said he was going to try to get my things back but then due to me not having nothing to communicate with, he resigned as my attorney as of right now. I understand the cops point of view I've read reports and I see Miguel was a bad person in their eyes, which is why I no longer involve my self around him or his family any longer. I honestly just wanted my phone back with my daughters pictures since then I have got a new phone I have tried to contact Mark with then he told me he was no longer my attorney and from there I kind of left everything alone because idk what to do next . Or even the status of the case.

B. <u>Defendants contend</u>: There were no violations of law, no excessive force, and the individual deputies are protected by qualified immunity. There is no *Monell* violation.

This action arises from the lawful stop, pursuit, and arrest of Mr. Cortez, then 18 years of age, on November 19, 2019, by members of the Merced County Sheriff's Department. Ms. Mercado, then 23 years of age, was a willing occupant of Cortez' car.

On the day of the incident, the Sheriff's Tactical and Recon Team (STAR) learned that Mr. Cortez, a known member of the violent Sureno street gang, was

in possession of firearms in the Hilmar/Stevinson area and was subject to search at any time as a term of probation.

The STAR Team located Cortez in Hilmar, but out of concern for the many people in the area, decided to follow him from a McDonald's. Cortez drove South onto SR 165, a two-lane road that is also the center street of the town. An unmarked car driven by Deputy Royel followed him. Royel's car and another unmarked car driven by Deputy Ibarra, pulled out of the way letting Deputy Sparks, in his marked Ford Explorer pull ahead of them.

Before long, Deputy Sparks observed traffic violations and initiated a traffic stop on Cortez. (He also was aware from dispatch that Cortez did not have a license.) Cortez finally pulled over after about one mile in a rural area outside of Hilmar. Royel and Ibarra were well away from the scene. Deputy Wali, another member of the STAR team, parked behind Sparks' car and walked toward the passenger side of Cortez's car.

As shown on his body cam, Sparks positioned himself outside the driver's door of the Cortez vehicle and spoke with Cortez and Ms. Mercado. The conversation was amiable, but Cortez is seen to be fidgety and was repeatedly told by Sparks to keep his hands on the steering wheel. Cortez was searching around the car. Sparks asked Cortez if he was on probation and requested a license. He said he was on probation, but he did not know why. Mercado produced an identification card. She said the deputy was making them nervous. (This is consistent with gang members' girlfriend's activities: to try to distract.) Sparks saw the back seat had a lot of things in it, including beer. Sparks told Cortez to take his seatbelt off with his right hand. Cortez then floored the accelerator to escape the scene.

The deputies pursued him at speeds over 100 MPH on SR 165. Cortez drove on the wrong side of the road several times, almost hitting other cars. At

one point, Cortez made a sharp U-turn and Wali had to swerve to avoid getting hit.

Cortez crashed his car into a fence leading to a park. The impact was not significant. Although the area was very dark, the Cortez car was illuminated by the arriving sheriff vehicles. Sparks arrived immediately after the Cortez car came to a stop. He immediately exited his patrol car and ordered Cortez to put up his hands. He saw movements indicating Cortez was moving his hands around the car and saw Cortez' head go up and down. (His movements are corroborated by Mercado's subsequent videotaped interview.) Wali pulled up and stopped to the left of Sparks' car. Cortez started to exit the car and may have had his hands up. Sparks believed Cortez was armed and that he was about to be in a gunfight with him. He was aware that Cortez had a history of illegally possessing automatic weapons. Seeing a threat to his life, Sparks opened fire at the car, very quickly firing 14 times. Neither Cortez nor Mercado, was hit or injured in any way. In the instant this happened, Cortez had gone back into the car.

By this time, Royel and Ibarra arrived in their respective cars, stopping to the right of Sparks' car. They were watching the passenger door of the Cortez vehicle, where Ms. Mercado was seated.

Cortez then put his hands outside the window. Sparks took this as compliance and that Cortez was following directions. Cortez opened the door and exited the vehicle. Sparks told Cortez to keep his hands up. He did so and then closed the door with one of his hands. Sparks had not told him to do this. Mercado was still in the car. Sparks told Cortez to turn away from him. Cortez puts his hands down immediately toward his waist and began to lift his shirt. In this fraction of a second, Sparks thought he was reaching for a gun and fired one time at Cortez. Cortez went down immediately, shot in the leg.

As shown by the body camera footage, the incident where Cortez was shot lasted only about four seconds. In fact, only 37 seconds elapsed from the first shot

upon Deputy Spark's arrival to the final shot, which wounded Mr. Cortez. The initial stop before the attempted escape lasted approximately 5 minutes and 23 seconds. The pursuit from the attempted escape of the initial stop to the crash lasted approximately 7 minutes and 43 seconds.

Ms. Mercado provided a videotaped post incident interview. She said Cortez was lying when he told Sparks he was searching for his license, but he kept looking for something in the car.

Ms. Mercado had met Cortez on Facebook only 4 days before the incident, but was already communicating as if they were in a romantic relationship by November 15th. Ms. Mercado was very aware of key aspects about Cortez before the incident. She knew he was a gangster by his appearance, knew that he was involved with illegal firearms, knew he was on probation, and knew of his antipathy for police. Based on messaging, Defendants believe she knew he had guns in the car. She consented to a search of her cell phone. The phone revealed pre-incident chat messages. For example, on November 10th Cortez told her he had made his Glock into an automatic weapon and provided a picture of the same. He mentioned gunsmith and federal charges on top of enhancements. Other pictures/chats depicted him with the weapons, and described that he "peeped an automatic shotgun". On the same day, he sent her messages about seeing "pigs" with each other, but he had to play it smooth because he would get off probation on December 18. They were together on November 12th. The phone also had a video taken while they were driving on November 12th depicting Cortez pulling out a handgun from his front waistband and pointing it at the phone camera. Another video shows him holding a loaded magazine. He also sent other pictures of him holding handguns with extended magazines. The automatic weapon referenced and shown in texts was later found in the car, within reach during the incident. Another video shows law enforcement dealing with something on the

roadway, then pans down to a leg showing a black firearm. Ms. Mercado certainly knew what she was getting into with her relationship with Mr. Cortez.

A search of the car revealed methamphetamine found on the driver's side door, a brown leather pistol holster on the back seat, and a .40 cal Glock pistol with 13 (hollow point) rounds in a magazine and an attachment making the pistol capable of automatic fire found under the driver's seat. (The automatic weapon appears to be the same gun seen on Ms. Mercado's phone.) A shotgun and live ammunition of various calibers were also found in the car.

  C. <u>Contested Facts</u>
    1. There are no contested facts.
  D. <u>Undisputed Legal Issues</u>
    1. Jurisdiction and Venue.
    2. The stop of the vehicle was lawful.
  E. <u>Disputed Legal Issues</u>
    1. All other issues.
    2. Whether this Court lacks jurisdiction over Defendants Sparks, Wali, Royel, and Perez because they have not been properly served and service has not been waived.

**3. Amendments to the Pleadings**

None are anticipated.

**4. Pending Matters**

There are no pending matters.

**5. Discovery Plan**

The parties anticipate taking depositions of witnesses and designating expert witnesses as well as written discovery. Pursuant to Rule 26(f) of the Federal Rules of Civil Procedure, the parties agree to the following discovery plan:

  A. The parties shall exchange Initial Disclosures as required by Fed. R. Civ. P. 26(a)(1) on or before December 2, 2020.

    B.    Discovery is needed on all of the issues involved in the case. Discovery will be completed by the discovery cutoff date as set forth below. There is no need for discovery to be conducted in phases, or be limited to or focused upon particular issues.

    C.    Each party will be allowed 25 interrogatories to each side. A request for the name and address of witnesses with knowledge of a fact, and identification of documents supporting the same fact, and the name and address of the custodian of those documents will count as one interrogatory.

    D.    The number of depositions allowed by Fed. R. Civ. P. 30(a)(2)(A) is sufficient, except that depositions of designated expert witnesses will not count against the limit. The duration of depositions specified by Fed. R. Civ. P. 30(d)(2) is sufficient.

    E.    The number of requests for admission will not be limited.

    F.    In order to allow ample time for discovery of experts, all parties should disclose expert witnesses approximately two months prior to the close of expert discovery.

    G.    All discovery limits and deadlines will be subject to change by written agreement of the parties without the need for court order or by court order pursuant to noticed motion.

    H.    The parties do not anticipate taking discovery outside of the United States.

    I.    The parties anticipate video recording of depositions.

    J.    Electronic Discovery. The defendants will reasonably review their respective computer files, applicable, to ascertain the contents thereof; including archival and legacy data (outdated formats or media), and disclose in initial discovery (self−executing routine discovery) the computer-based evidence which may be used to support claims or defenses. Ms. Mercado will review and provide all electronic communications with Mr. Cortez both before and after the incident,

as well as all audio, video, photographic and other electronic evidence in her possession, custody, and control.

### 6. Dates Agreed By All Parties

| | |
|---|---|
| Fed. R. Civ. P. 26(a)(1) Disclosure Exchange | December 3, 2020 |
| Non-Expert Discovery Cut-Off | April 2, 2021 |
| Expert Disclosure Deadline | May 7, 2021 |
| Rebuttal Expert Disclosure Deadline | May 28, 2021 |
| Expert Discovery and Deposition (Completion) Deadline: | June 25, 2021 |
| Non-Dispositive and Dispositive Motion Filing Deadline: | July 30, 2021 |
| Pre-Trial Conference Date: | October 12, 2021 |
| Trial Date (3-5 Days): | December 7, 2021 |

### 7. Settlement

Defendant does not see a settlement conference as a feasible option at this time.

### 8. Jury Trial Demand

Plaintiff and Defendants demand a trial by jury.

### 9. Trial Estimate

The parties estimate 3-5 days.

### 10. Consent to Proceed Before a United States Magistrate Judge

Defendants consent to proceed before a United States Magistrate Judge.

### 11. Bifurcation

Any claim for punitive damages should be bifurcated.

### 12. Related Cases

There are no related cases.  Mr. Cortez's portion of the case has been dismissed.

### 13. Other matters

None.

//

| | | |
|---|---|---|
| Dated: November 3, 2020 | | */s/ Viktoria Desiree Mercado* |
| | | Viktoria Desiree Mercado, plaintiff |

Dated: November 4, 2020                Forrest W. Hansen
                                                            Merced County Counsel


                                                    By:   /s/ *Janine Highiet-Ivicevic*
                                                            Janine L. Highiet
                                                            Deputy County Counsel
                                                            County of Merced

                                                            Attorneys for Defendants County of Merced, Merced County Sheriff's Office, Vernon Warnke, Joseph Royel, Julio Ibarra Perez, Nasir Wali

                                                    Authorized e-signature: Nov. 4, 2020

Dated: November 3, 2020                Berry Wilkinson Law Group

                                                    By:   *Alison Berry Wilkinson*
                                                            Alison Berry Wilkinson
                                                            Attorneys for Defendant
                                                            Damian Sparks